L. Eric Dowell, SBN 011458
Joseph T. Clees, SBN 009645
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.,
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700
Fax: 602-778-3750
eric.dowell@ogletree.com
joe.clees@ogletree.com

Matthew S. Disbrow (upon pro hac vice admission)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: 313-465-7000
mdisbrow@honigman.com

Attorneys for Plaintiff SUNLAND ASPHALT &
CONSTRUCTION, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| SUNLAND ASPHALT & CONSTRUCTION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BLAS VERDUGO, an individual, THOMAS FRANKS, an individual, ELDON DOUGHTY, an individual, ALLIANCE ASPHALT OF ARIZONA LLC, an Arizona limited liability company, and JOHN AND JANES DOES 1 THROUGH 10,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR INJUCTIVE AND OTHER RELIEF**<br><br>**DEMAND FOR JURY** |

Plaintiff SUNLAND ASPHALT & CONSTRUCTION, LLC ("Sunland" or the

"Company"), by and through its attorneys, and for its Complaint for Injunctive and Other Relief

against Defendants BLAS VERDUGO ("Verdugo"), THOMAS FRANKS ("Franks"), ELDON

DOUGHTY ("Doughty"), ALLIANCE ASPHALT OF ARIZONA LLC ("Alliance") and JOHN

AND JANE DOES 1 THROUGH 10 (collectively referred to hereafter as "Defendants"), states

as follows:

**INTRODUCTION**

1.     Based in Phoenix, Arizona, Sunland is a leading asphalt and construction company that provides a full range of asphalt maintenance and general contracting services to its customers across the country.

2.     Defendants Verdugo, Franks and Doughty are former employees of Sunland, who held key positions and places of trust within the company, and obtained years of industry experience and special knowledge through their long associations with Sunland and its predecessor companies.

3.     While still employed by Sunland, Verdugo, Franks and Doughty breached their agreements with, and obligation to, Sunland by, among other things, forming Alliance to directly compete against Sunland.  Defendants also stole Sunland's trade secrets, confidential information, and other property, and secretly diverted business away from Sunland to Alliance.

4.     Defendants' actions constitute direct violations of their common law duties to Sunland, as well as statutory law regarding the protection of trade secrets.  Moreover, Doughty and Franks have violated their Confidentiality & Non-Disclosure Agreements and Non-Compete Agreements with Sunland.  [A template of these Agreements is attached as Exhibit A].

**PARTIES, JURISDICTION & VENUE**

5.     Sunland is a Delaware limited liability company, with its corporate offices located in Maricopa County, Arizona.

6.     Upon information and belief, Verdugo is a resident of Arizona, and during all relevant periods worked in Arizona.

7.     Upon information and belief, Franks is a resident of Arizona, and during all relevant periods worked in Arizona.

8.     Upon information and belief, Doughty is a resident of Arizona, and during all relevant periods worked in Arizona.

9.     Upon information and belief, Alliance is an Arizona corporation, with its principal office located in Maricopa County, Arizona.

10.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 as a portion of this dispute arises under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836 et seq., with jurisdiction being expressly conferred in accordance with 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over all related claims herein in accordance with 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendants, and venue is proper in this district under 28 U.S.C. § 1391(b)(1) as all Defendants reside within this district. Venue is also proper in this district under 28 U.S.C. 1391(b)(2) as Defendants' unlawful acts were committed in this district and will cause, and have caused, harm to Sunland in this district.

## GENERAL ALLEGATIONS

**A.  Sunland Protects Its Business and Confidential Information From Unfair Competition**

12.     Sunland is headquartered in Phoenix, Arizona and has offices in Arizona, Colorado, Nevada, New Mexico, Oklahoma and Texas.

13.     Since 1979, Sunland has been an industry leader in providing an array of construction and maintenance services including concrete services, asphalt repairs, crack sealing, sealcoating and paving. Sunland also provides a host of general contracting services.

14.     Sunland has worked diligently over the years to develop its business, including, without limitation, its ongoing relationships with customers and potential customers.

15.     Sunland excels in a variety of sophisticated installation and repair projects, including, without limitation, large asphalt installation and repair projects and concrete installation and repair projects, such as projects concerning sidewalks, roadways, parking lots, pavement, light pole bases, footers, foundations and street curbs.

16.     To set itself apart from its competitors, Sunland makes substantial investments to develop its proprietary and trade secret business model, network of vendor contacts, referral sources, and pricing and business strategies that allow it to grow and maintain its business.

17.     Moreover, there is significant competition among asphalt, concrete, paving and construction companies, and Sunland takes considerable steps to protect its business from its competitors, including, without limitation, requiring password protection on company computers,

computer networks and information technology systems, and entering into confidentiality, non-competition and non-solicitation agreements with key employees.

**B. Sunland Hires Franks and Doughty and Places Them in Key Positions of Trust**

18.     On or around May 31, 1988, Franks began his employment with a predecessor company of Sunland, and ultimately became an Account Executive for Sunland, which is a sales position that provided Franks with access to Sunland's trade secrets and confidential information, as well as significant and regular contact with its customers, potential customers and vendors.

19.     In consideration for his employment, Franks entered into both a Confidentiality and Non Disclosure Agreement and a Non-Compete Agreement that protects Sunland's business.

20.     On or around August 31, 2021, Franks voluntarily resigned his position with Sunland citing personal reasons for his separation.

21.     On or around October 13, 2014, Doughty began his employment with a predecessor company of Sunland, and ultimately became a key sales representative for Sunland, which is a position that provided Doughty with access to Sunland's trade secrets and confidential information, as well as significant and regular contact with its customers, potential customers and vendors.

22.     In consideration for his employment, Doughty entered into both a Confidentiality and Non Disclosure Agreement and a Non-Compete Agreement that protects Sunland's business.

23.     On or around September 4, 2021, Doughty voluntarily resigned his position with Sunland indicating he had another job.

24.     Franks and Doughty both worked out of Sunland's Tucson office, located in Pima County, Arizona.

**C. Franks and Doughty Agree to Protect Sunland's Business**

25.     The Confidentiality and Non-Disclosure Agreements ("CA") and Non-Compete Agreements ("NA") that Franks and Doughty signed (collectively referred to hereafter as the "Agreements") expressly required Franks and Doughty to uphold their duty of loyalty to Sunland, to protect the confidentiality of Sunland's trade secrets and proprietary information, and to refrain from competing against Sunland or soliciting its customers, potential customers, and employees.

4

26.     With regard to Franks's and Doughty's duties of loyalty, the Agreements specifically state as follows:

**Duty of Loyalty**
During employment with the EMPLOYER, EMPLOYEE shall devote full business energies and loyalties to the benefit of the EMPLOYER and shall not, directly or indirectly, compete, prepare to compete, or in any way assist others to compete, with the EMPLOYER in any aspect of the EMPLOYER's business or anticipated business.

(CA, p. 3).

27.     With regard to protecting trade secrets and confidential information, the CAs state, among other things, as follows:

**Proprietary Information**
EMPLOYEE understand[s] that employment by the EMPLOYER creates a relationship of confidence and trust with respect to the business and customer relationships EMPLOYEE creates, maintains or cultivates, and any information EMPLOYEE learns in the course of employment that (a) is of a confidential or sensitive nature, (b) is not generally available to EMPLOYER competitors through proper means (whether written or unwritten, and whether or not constituting a "trade secret" under applicable law), and (c) relates to the business of the EMPLOYER or any other party with whom/which the EMPLOYER agrees, undertakes or attempts to have a confidential relationship ('Proprietary Information"). Such Proprietary Information includes (without limitation) customer information, sales information, sales history, pricing, marketing plans, product plans, business strategies, financial information, techniques, processes, designs, methods, forecasts, personnel information and customer lists and related information.

**Definition of Confidential Information**
For purposes of this AGREEMENT, "Confidential Information" means any data or information that is proprietary to the EMPLOYER and not generally known to the public, whether in tangible or intangible form, whenever and however disclosed, including, but not limited to: (a) any marketing strategies, plans, financial information, or projections, operations, sales estimates, business plans and performance results relating to the past, present or future business activities of such party, its affiliates, subsidiaries and affiliated companies; (b) plans for products or services, and customer or supplier lists; (c) any scientific or technical information, invention, design, process, procedure, formula, improvement, technology or method; (d) any concepts, reports, data, know-how, works-in-progress, designs, development tools, specifications, computer software, source code, object code, flow charts, databases, inventions, information and trade secrets; and (e) any other information that should reasonably be recognized as confidential information of the EMPLOYER. Confidential Information need not be novel, unique, patentable, copyrightable or constitute a trade secret in order to be designated Confidential

Information. The EMPLOYEE acknowledges that the Confidential Information is proprietary to the Disclosing Party, has been developed and obtained through great efforts by the EMPLOYER and that regards all of its Confidential Information as trade secrets[.]

\* \* \*

**Disclosure of Confidential Information**
From time to time, the EMPLOYER may disclose Confidential Information to the EMPLYOEE.  The EMPLOYEE will: (a) limit disclosure of any Confidential Information to its directors, officers, EMPLOYEEs, agents or representatives (collectively "Representatives") who have a need to know such Confidential Information in connection with the current or contemplated business relationship between the parties to which this AGREEMENT relates, and only for that purpose; (b) advise its Representatives of the proprietary nature of the Confidential Information and of the obligations set forth in this AGREEMENT and require such Representatives to keep the Confidential Information confidential; (c) shall keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and (d) not disclose any Confidential Information received by it to any third parties (except as otherwise provided for herein).

**Use of Confidential Information**
The EMPLOYEE agrees to use the Confidential Information solely in connection with the current or contemplated business relationship between the parties and not for any purpose other than as authorized by this AGREEMENT without the prior written consent of an authorized representative of the Disclosing Party. No other right or license, whether expressed or implied, in the Confidential Information is granted to the EMPLOYEE hereunder. Title to the Confidential Information will remain solely in the Disclosing Party. All use of Confidential Information by the EMPLOYEE shall be for the benefit of the EMPLOYER and any modifications and improvements thereof by the EMPLOYEE shall be the sole property of the EMPLOYER.

(CA, pp. 1-2).

28.     Furthermore, the CAs required Franks and Doughty to account for and repay any profits they obtain in violation of those agreements, as follows:

**Accounting for Profits**
EMPLOYEE covenants and agrees that, if EMPLOYEE shall violate any covenants or AGREEMENTs in, EMPLOYER shall be entitled to an accounting and repayment of all profits, compensation, commissions, remunerations or benefits which EMPLOYEE directly or indirectly has realized and/or may realize as a result of, growing out of or in connection with any such violation; such remedy shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which EMPLOYER is or may be entitled at law or in equity or under this AGREEMENT.

6

(CA, p. 3).

29.     In addition to the foregoing, the NAs provided further protections from unfair competition and, among other things, state as follows:

> During EMPLOYEE's employment by EMPLOYER and for a period of one year after EMPLOYEE ceases to be employed by EMPLOYER, EMPLOYEE shall not within "Restricted Territory" (Pima County), directly or indirectly, either for EMPLOYEE's own account or as a partner, shareholder (other than shares regularly traded in a recognized market), officer, EMPLOYEE, agent or otherwise, be employed by, connected with, participate in, consult or otherwise associate with Bates Paving & Sealing Inc., Tucson Asphalt Contractors, Inc., Magnum Paving Inc., Sunrise Asphalt Co., Sunland Asphalt, Prime Paving LLC, Southwest Slurry Seal Inc., Eagle Rock Excavating LLC, Southern Arizona Paving-Construction, A&S Paving Inc., Old Pueblo Sealcoating, Slender Paving, B&C Paving Inc., Bear Paving Inc., Stone Paving Inc., Pima Paving Inc. who are competitive with EMPLOYER. By way of example, and not as a limitation, the foregoing shall preclude EMPLOYEE from soliciting business or sales from, or attempting to convert to other sellers or providers of the same or similar products or services as provided by EMPLOYER, any customer, client or account of EMPLOYER with which EMPLOYEE has had any contact during the term of employment."

> During employment and for a period of one year thereafter, EMPLOYEE shall not, directly or indirectly, solicit for employment or employ any EMPLOYEE of EMPLOYER.

> * * *

> During employment, and thereafter for one year, EMPLOYEE shall not disclose to anyone any Confidential Information. For the purposes of this AGREEMENT, "Confidential Information" shall include any of EMPLOYER's confidential, proprietary or trade secret information that is disclosed to EMPLOYEE or EMPLOYEE otherwise learns in the course of employment such as, but not limited to, business plans, customer lists, financial statements, software diagrams, flow charts and product plans. Confidential Information shall not include any information which; (i) is or becomes publicly available through no act of EMPLOYEE, (ii) is rightfully received by EMPLOYEE from a third party without restrictions; or (iii) is independently developed by EMPLOYEE."

(NA, p. 1).

**D.  Sunland Hires Verdugo and Places Him in a Key Position of Trust**

30.     On or around January 7, 1991, Verdugo began his employment with a predecessor company of Sunland, and ultimately became a Production Manager for Sunland, which is a management position that provided Verdugo with access to Sunland's trade secrets and confidential information, as well as contact with its customers, potential customers and vendors.

7

31.     Like Franks and Doughty, Verdugo worked out of Sunland's Tucson office, which is located in Pima County, Arizona.

**E.  Verdugo Lies About the Reasons for His Separation from Sunland**

32.     On or around August 9, 2021, Verdugo voluntarily resigned his position with Sunland citing health concerns; however, upon information and belief, Verdugo's statements concerning his separation were untrue and intended to mislead Sunland concerning his real intentions.

33.     In particular, but without limitation, on or around August 3, 2021, Verdugo requested a meeting with Sunland management at which he suggested that, for health reasons, Sunland should consider releasing him from employment.

34.     Instead, Sunland offered Verdugo Family and Medical Leave Act ("FMLA") leave, which he originally agreed to take.

35.     However, Verdugo subsequently changed his position and told Sunland that FMLA would not work and he wanted his employment terminated.

36.     Sunland would later learn that Verdugo actually was conspiring with Franks and Doughty to steal Sunland's business and form a company to directly compete against Sunland and steal its business.

**F.  Franks, Doughty and Verdugo Form Alliance While Still Employed With Sunland**

37.     Despite their fiduciary and other obligations to Sunland, on or around August 11, 2021, Franks, Doughty and Verdugo formed Alliance Asphalt of Arizona LLC ("Alliance").

38.     The State of Arizona website specifically lists Franks and Doughty as member/managers of Alliance and Alliance's registered agent is National Contractor Services Corporation, address: 1010 Jefferson Street, Phoenix, Arizona 85034.

39.     Notably, when Franks, Doughty and Verdugo formed Alliance, they still were employed by Sunland.

40.     By forming Alliance while still employed by Sunland, Franks and Doughty breached multiple provisions of their Agreements with Sunland, and Franks, Doughty and Verdugo breached their fiduciary duties to Sunland.

**G. Defendants Conspire to Steal Sunland's Business and Damage the Company**

41.     Defendants did not simply prepare to compete against Sunland while employed by the Company, they actively conspired and schemed to intentionally and maliciously injure Sunland by, among other things, canceling Sunland's existing contracts, stealing its business, interfering with its customers, and engaging in the theft of Sunland's property.

42.     In doing so, Defendants unlawfully used and misappropriated Sunland's confidential information and trade secrets, including, without limitation, trade secrets and confidential information concerning Sunland's business contracts, sources of business, work schedules, customer contacts, and pricing information (collectively, "Protected Information").

43.     For example, but without limitation, while still employed by Sunland, Franks, Doughty and/or Verdugo identified Sunland's existing signed work contracts and cancelled many of those contracts without Sunland's authorization or knowledge and without any reasonable business justification that would benefit Sunland.

44.     The Individual Defendants subsequently stole the business from the Sunland contracts they conspired to cancel and completed work for these same customers, taking the proceeds from this business for themselves and for Alliance.

45.     A Sunland representative visited one of the job sites where a Sunland contract had been cancelled and noticed another company performing the work, which Sunland later discovered was Alliance and the other Defendants.  Sunland contacted the customer, and the customer confirmed it was happy with Sunland's prior work, professing confusion about the cancelled contract.

46.     On or about November 2, 2021, another customer sent an email directed to Franks, but inadvertently sent it to Franks' prior Sunland email address.  In the email, the customer discussed Defendants changing their bid proposal based on Sunland's proposed scope of work and other Sunland confidential information – thus, again, diverting business away from Sunland to Defendants.

47.     Upon information and belief, Defendants continue to interfere unlawfully with Sunland's business relationships and expectancies.

9

48.     Defendants also used some of Sunland's own credit lines, supplies and equipment to unlawfully compete against Sunland and steal its business.

49.     For instance, following Verdugo's departure, Sunland monitored Verdugo's Sunland email address and uncovered an email sent by an equipment rental company, which made clear that Verdugo was still holding himself out as a Sunland employee to rent work equipment under Sunland's prequalified business account.

50.     Further, on or around October 4, 2021, a striping machine was stolen from Sunland's property.  After Sunland confronted one of the employees involved in the theft, the machine was returned.  However, the employee immediately quit his job and implicated others as being behind the theft.  Upon information and belief, Defendants were involved in this theft and used Sunland's equipment to complete jobs in competition with the Company.

51.     Furthermore, on or around October 11, 2021, Verdugo contacted a Sunland mechanic and solicited him to work on Defendants' equipment, indicating that Defendants would pay him "cash under the table."

52.     Upon information and belief, and in addition to the foregoing, Defendants have improperly retained, accessed, deleted, destroyed, misappropriated, disclosed, used, and continue to use, other Protected Information concerning or relating to Sunland's customers and prospective customers, business opportunities and leads, requests for proposals, job specifications, customer requirements, business and marketing plans and methods, cost and pricing information, detailed customer bids, and other documents and information that are Sunland's sole and exclusive property, to Sunland's detriment and for Defendants' benefit.  Defendants' unlawful conduct allowed, and continues to allow, Defendants to unfairly compete with Sunland and tortiously interfere with its business relationships and expectancies, and otherwise violates the law.

53.     Sunland previously demanded in writing that the Individual Defendants cease and desist from all such unlawful conduct, but they have failed or refuse to do so.

54.     Defendants' actions have caused, and continue to cause, substantial monetary damages to Sunland valued in the hundreds of thousands of dollars or more.  Moreover, Defendants actions have caused, and continue to cause Sunland irreparable harm, for which no remedy at law

10

is adequate, including without limitation, loss of Sunland's competitive advantage, loss of business, loss of goodwill, and damage to Sunland's reputation.

**COUNT I**
**(VIOLATION OF DEFEND TRADE SECRET ACT)**
**(Against All Defendants)**

55.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

56.     During the course of their relationship with Sunland, Franks, Doughty and Verdugo (the "Individual Defendants") were provided access to Sunland's confidential information, including, without limitation, Sunland's trade secrets and other Protected Information.

57.     Sunland's confidential information is not available to the general public and is closely guarded by Sunland.

58.     Sunland keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

59.     Sunland's confidential information, including, without limitation, its Protected Information, is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA"), because the information is not generally known outside of Sunland's business, Sunland has taken reasonable measures to guard the secrecy of the information, the information is of great value to Sunland and its competitors, Sunland invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Sunland continuously uses the information in its business.

60.     The trade secret information that Franks, Doughty and Verdugo misappropriated from Sunland is used in interstate commerce.

61.     The Individual Defendants had obligations to keep Sunland's confidential information private, to refrain from using or disclosing confidential information for the benefit of others, including, but not limited to, themselves, and to return Sunland's confidential information to Sunland immediately upon termination of their employment.

62.     However, Defendants have ignored (and continue to ignore) such obligations and misappropriated Sunland's confidential information for their own benefit, intending to cause injury

11

and damage to Sunland.

63.     Upon information and belief, Defendants are continuing to use Sunland's confidential information on behalf of Alliance, the company they secretly formed while still employed by Sunland to compete with Sunland.

64.     Unless restrained, Defendants will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Sunland's confidential information.

65.     Actual or threatened misappropriation of confidential information may be enjoined under the DTSA, and such injunctive relief against Defendants is appropriate.

66.     Sunland requests an order enjoining Defendants from using Sunland's confidential information and from disclosing Sunland's confidential information to anyone not authorized to receive it.

67.     Sunland further requests an order requiring Defendants to return any and all Sunland confidential information to Sunland.

68.     Defendants' misappropriation of Sunland's confidential information has been willful and malicious, and Sunland has incurred significant damages as a result of Defendants' misappropriation.

69.     Defendants' actions have also damaged Sunland's goodwill, reputation, and legitimate business interests.

70.     Sunland is therefore entitled to recover not only compensatory damages but also punitive damages and attorneys' fees resulting from Defendants' wrongful misappropriation of Sunland's confidential information.

**COUNT II**
**(VIOLATION OF ARIZONA UNIFORM TRADE SECRET ACT)**
**(Against All Defendants)**

71.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

72.     Sunland takes reasonable steps to keep its confidential information safe and to safeguard it from unlawful misappropriation.

73.     Sunland protects its confidential information by, among other things, requiring

password protection on company computers, computer networks, and information technology systems, and entering into confidentiality, non-competition, and non-solicitation agreements with key employees.

74.    As a result of their positions of trust within the Company, the Individual Defendants had access to Sunland's Protected Information and other confidential, proprietary, and trade secret information.

75.    This information is all valuable because it is not generally known and it would allow competitors to directly compete with Sunland and/or gain a competitive edge over Sunland.

76.    Accordingly, Sunland's Protected Information is properly defined as a trade secret under the Arizona Uniform Trade Secret Act, A.R.S. §§ 44-401 to 407.

77.    The Individual Defendants acquired access to Sunland's trade secret information under circumstances giving rise to a duty to maintain the secrecy, and limit the use, of this trade secret information, which they had acquired as a result of their employment with Sunland.

78.    The Individual Defendants exceeded their authorized access to Sunland's trade secret information by, among other things, accessing, using, deleting, destroying, and/or copying the trade secret information described above, and cancelling contracts with clients, which also constitute Sunland's trade secrets.

79.    Defendants' conduct constitutes improper acquisition, use and the misappropriation of trade secrets in violation of the Arizona Uniform Trade Secret Act.

80.    Sunland is entitled to compensatory damages and injunctive relief as a result of Defendants' conduct.

81.    Moreover, Defendants willfully and maliciously acquired Sunland's trade secrets, entitling Sunland to exemplary damages and attorneys' fees in accordance with A.R.S. § 44-403 and § 44-404.

82.    Defendants' continued possession of and access to Sunland's confidential, proprietary, and trade secret information is causing irreparable injury to Sunland for which there is no adequate remedy at law.

83.    Sunland will continue to suffer harm until its property is returned and Defendants

13

are enjoined from using, accessing, or disclosing Sunland's trade secret information.

## COUNT III
### (VIOLATION OF RICO SECTION 1962(b))
**(Against All Defendants)**

84.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

85.     While still employed by Sunland, the Individual Defendants formed and established Alliance, which is an enterprise engaged in and whose activities affect interstate commerce.

86.     Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Among other things, the Individual Defendants secretly formed and controlled Alliance while still employed by Sunland, unlawfully accessed and misappropriated Sunland's trade secret information, covertly canceled Sunland's contracts with customers, stole or otherwise misappropriated Sunland's equipment and other property, used Sunland's trade secret information and other property to perform work in competition with Sunland, and diverted business with Sunland customers, including, without limitation, customers whose contracts with Sunland the Individual Defendants canceled, away from Sunland to Alliance and/or directly to themselves.

87.     The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

88.     The Defendants have directly and indirectly acquired and maintained interests in, and control of, the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

89.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Sunland has been injured in its business and property, including, without limitation, by the loss of hundreds of thousands of dollars or more in lost revenue, the loss of use of its property, and irreparable damage to its goodwill and business reputation.

90.     As a consequence of Defendants' conduct, Sunland is entitled to an award of its actual damages, as proven at trial, as well as an award for treble damages and attorneys' fees.

## COUNT IV

14

**(VIOLATION OF RICO SECTION 1962(c))**
**(Against All Defendants)**

91.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

92.     While still employed by Sunland, the Individual Defendants formed and established Alliance, which is an enterprise engaged in and whose activities affect interstate commerce.

93.     Defendants conducted, participated in the conduct, and continue to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Among other things, the Individual Defendants secretly formed and participated in the operation and business of Alliance while still employed by Sunland, unlawfully accessed and misappropriated Sunland's trade secret information, covertly canceled Sunland's contracts with customers, stole or otherwise misappropriated Sunland's equipment and other property, used Sunland's trade secret information and other property to perform work in competition with Sunland, and diverted business with Sunland customers, including, without limitation, customers whose contracts with Sunland the Individual Defendants canceled, away from Sunland to Alliance and/or directly to themselves.

94.     The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

95.     Defendants have directly and indirectly conducted, participated in the conduct, and continue to participate in the conduct of the affairs of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

96.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Sunland has been injured in its business and property, including, without limitation, by the loss of hundreds of thousands of dollars or more in lost revenue, the loss of use of its property, and irreparable damage to its goodwill and business reputation.

97.     As a consequence of Defendants' conduct, Sunland is entitled to an award of its actual damages, as proven at trial, as well as an award for treble damages and attorneys' fees.

15

**COUNT V**
**(VIOLATION OF RICO SECTION 1962(d))**
**(Against All Defendants)**

98.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     As set forth above, the Defendants agreed and conspired to violate 18 U.S.C. §§ 1962 (b) and (c).

100.    Among other things, the Individual Defendants secretly formed and participated in the operation and business of Alliance, unlawfully accessed and misappropriated Sunland's trade secret information, covertly canceled Sunland's contracts with customers, stole or otherwise misappropriated Sunland's equipment and other property, used Sunland's trade secret information and other property to perform work in competition with Sunland, and diverted business with Sunland customers, including, without limitation, customers whose contracts with Sunland the Individual Defendants canceled, away from Sunland to Alliance and/or directly to themselves.

101.    Defendants have intentionally conspired and agreed to directly and indirectly acquire or maintain interests in the enterprise through a pattern of racketeering activity, and have conducted, participated in the conduct, and continue to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

102.    Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. Such conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962 (b) and (c), in violation of 18 U.S.C. § 1962(d).

103.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Sunland has been injured in its business and property, including, without limitation, by the loss of hundreds of thousands of dollars or more in lost revenue, the loss of use of its property, and irreparable damage to its goodwill and business reputation.

104.    As a consequence of Defendants' conduct, Sunland is entitled to an award of its actual damages, as proven at trial, as well as an award for treble damages and attorneys' fees.

**COUNT VI**
**(BREACH OF CONTRACT)**
**(Against Franks and Doughty)**

105.   Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

106.   As a condition of their employment, and continued employment, with Sunland, Franks and Doughty entered into the Agreements with Sunland or a predecessor of Sunland, which are intended to protect Sunland's trade secrets, confidential information and business.

107.   The Agreements are valid and enforceable contracts.

108.   Among other things, the CAs contain a contractual duty of loyalty provision that prohibited Franks and Doughty from competing, preparing to compete, or in any way assisting other to compete against Sunland during the period of their employment.

109.   Franks and Doughty breached their contractual duty of loyalty by forming a competing business (Alliance), cancelling Sunland contracts, misappropriating Sunland's Protected Information and equipment, and stealing Sunland's business all while still employed by Sunland.

110.   The CAs also contain detailed confidentiality provisions to safeguard Sunland's trade secrets and other Protected Information.

111.   Upon information and belief, Franks and Doughty breached their confidentiality obligations to Sunland by, among other things, improperly accessing, retaining, deleting, destroying, using and misappropriating Sunland's Protected Information concerning or relating to Sunland's customers and prospective customers, business opportunities and leads, requests for proposals, job specifications, customer requirements, business and marketing plans and methods, cost and pricing information, detailed customer bids, and other documents and information that are Sunland's sole and exclusive property.

112.   Moreover, the NAs contain reasonable and narrowly tailored non-compete provisions that prohibit Franks and Doughty from competing against Sunland anywhere in the Restricted Area for a period of one year after they ceased working for Sunland.

113.   The NA's also contain non-solicitation provisions that prohibit Franks and Doughty

17

from soliciting business from any customer, client or account of Sunland with which they had contact while employed by Sunland, or from attempting to divert business from such customers, clients or accounts away from Sunland and to a Sunland competitor, for a period of one year following the end of their employment (the "Customer Non-Solicitation Obligations").

114.   Franks and Doughty breached their Customer Non-Solicitation Obligations by, among other things, cancelling Sunland's contracts, contacting Sunland's customers, soliciting business from those same customers and diverting business away from Sunland and to Defendants, both while they were employed by Sunland and after their employment ended.

115.   The NAs also contain provisions that prohibit Franks and Doughty from directly or indirectly soliciting for employment or employing any employee of Sunland, both during their period of employment and for one year thereafter (the "Employee Non-Solicitation Obligations").

116.   Upon information and belief, Franks and Doughty breached  their Employee Non-Solicitation Obligations by, among other things, either directly or indirectly in concert with the other Defendants, soliciting Sunland's employees to work for Defendants, including, but not limited to, at least one Sunland mechanic, promising to pay him cash under the table.

117.   As a result of Franks and Doughty's multiple breaches of the Agreements, Sunland has been damaged in an amount to be determined at trial.

118.   Pursuant to the "Accounting for Profits" provision in the CAs, Sunland also is entitled to an accounting and the repayment of all profits, compensation, commissions, remunerations or benefits which Franks and/or Doughty directly or indirectly realized and/or may realize as a result of any violation of the CAs.

119.   Franks's and Doughty's conduct was willful, malicious and undertaken with an evil mind thereby warranting the imposition of punitive damages.

120.   Further, Sunland is entitled to an award of costs and attorneys' fees pursuant to A.R.S. § 12-341 and § 12-341.01.

121.   Franks's and Doughty's continued breaches of their obligations to Sunland have caused, and will continue to cause, Sunland to suffer irreparable harm, including, without limitation, loss of customers, confidential and proprietary information, goodwill and reputation,

18

and fair competition and competitive advantage.

122.   Monetary damages alone will not fully compensate Sunland for Franks's and Doughty's breaches of the Agreements and injunctive relief is warranted and required in this case.

**<u>COUNT VII</u>**
**<u>(BREACH OF GOOD FAITH AND FAIR DEALING)</u>**
**(Against Franks and Doughty)**

123.   Sunland incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.   The Agreements contain implied covenants of good faith and fair dealing between Franks and Doughty, on one hand, and Sunland, on the other hand, that neither party would act to deprive the other of benefits of the Agreements between them.

125.   Franks and Doughty breached their respective covenants of good faith and fair dealing with Sunland when they schemed to form Alliance, canceled Sunland's contracts, stole Sunland's business, misappropriated Sunland's trade secrets and other Protected Information, sought to interfere in Sunland's business relationships, commenced competing against Sunland and attempted to influence Sunland employees to work for Defendants.

126.   As a result of Franks's and Doughty's breach of the covenant of good faith and fair dealing, Sunland has been damaged in an amount to be determined at trial.

127.   Franks's and Doughty's conduct was willful, malicious and undertaken with an evil mind thereby warranting the imposition of punitive damages.

128.   Franks's and Doughty's continued breaches of their common law obligations to Sunland have caused, and will continue to cause, Sunland to suffer irreparable harm, including, without limitation, loss of customers, confidential and proprietary information, goodwill and reputation, and fair competition and competitive advantage.

129.   Monetary damages alone will not fully compensate Sunland for Franks's and Doughty's breaches of their common law obligations of good faith and fair dealing and injunctive relief is warranted and required in this case.

19

**COUNT VIII**
**(BREACH OF FIDUCIARY DUTY/BREACH OF DUTY OF LOYALTY)**
**(Against All Individual Defendants)**

130.    Sunland incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

131.    The Individual Defendants occupied positions of trust and confidence at Sunland as account executives, sale representatives, project consultants and/or production managers for Sunland, and owed duties of loyalty, concern, honesty, fair dealing, fair play and other fiduciary duties to Sunland.

132.    Among other things, the Individual Defendants breached these duties when they secretly formed and participated in the operation and business of Alliance while still employed by Sunland, unlawfully accessed and misappropriated Sunland's trade secret information, covertly canceled Sunland's contracts with customers, stole or otherwise misappropriated Sunland's equipment and other property, used Sunland's trade secret information and other property to perform work in competition with Sunland, and diverted business with Sunland customers, including, without limitation, customers whose contracts with Sunland the Individual Defendants canceled, away from Sunland to Alliance and/or directly to themselves.

133.    As a result of the Individual Defendants' breach of their common law fiduciary duties and other duties of loyalty, Sunland has been damaged in an amount to be determined at trial.

134.    Franks's and Doughty's conduct was willful, malicious and undertaken with an evil mind thereby warranting the imposition of punitive damages.

135.    Franks's and Doughty's continued breaches of their common law obligations to Sunland have caused, and will continue to cause, Sunland to suffer irreparable harm, including, without limitation, loss of customers, confidential and proprietary information, goodwill and reputation, and fair competition and competitive advantage.

136.    Monetary damages alone will not fully compensate Sunland for Franks's and Doughty's breaches of their common law obligations and injunctive relief is warranted and required in this case.

**COUNT IX**
**(TORTIOUS INTERFERENCE WITH CONTRACT, BUSINESS RELATIONSHIPS**
**AND BUSINESS EXPECTANCY)**
**(Against All Defendants)**

137.    Sunland incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

138.    Sunland had customer contracts, as well as ongoing business relationships and expectations of maintaining the same with respect to its customers.

139.    Defendants knew about these contracts, relationships and expectancies.

140.    In fact, while the Individual Defendants were employed by Sunland, they helped Sunland prepare bids for projects that resulted in Sunland being awarded such contracts, and interacted with Sunland's customers in furtherance of Sunland's business relationships and expectancies.

141.    Defendants intentionally interfered with Sunland's contractual and/or business relationships and expectations when they canceled Sunland's contracts and diverted the business to Alliance and/or themselves.

142.    Defendants' conduct was improper and caused damages to Sunland in an amount to be proven at trial.

143.    Defendants' conduct was willful, malicious, carried out with an evil mind, and/or performed with a conscious disregard of the substantial risk of harm to Sunland, thereby entitling Sunland to an award of punitive damages.

144.    Defendant's tortious interference has caused, and will continue to cause, Sunland to suffer irreparable harm, including, without limitation, loss of customers, confidential and proprietary information, goodwill and reputation, and fair competition and competitive advantage.

145.    Monetary damages alone will not fully compensate Sunland for Defendants' tortious interference with Sunland's contractual and/or business relationships and expectations and injunctive relief is warranted and required in this case.

21

**COUNT X**
**(CONVERSION)**
**(Against All Defendants)**

146.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

147.     Under Arizona law, conversion is an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.

148.     As described above, Defendants have converted Sunland's property including, but not limited to, Sunland's Protected Information, equipment and other property.

149.     Defendants' conduct, as referenced above, constitutes conversion of materials, documents and physical property that belong to Sunland.

150.     Defendants' conduct was improper and caused damages to Sunland in an amount to be proven at trial.

151.     Defendants' conduct has resulted, and will continue to result, in irreparable harm and damage to Sunland, including, but not limited to, loss of its competitive advantage, loss of business, loss of goodwill, loss of confidentiality, loss of income, and/or damage to its reputation.

152.     Unless restrained and enjoined, Defendants will continue their unlawful possession, use, and control of Sunland's property.

**COUNT XI**
**(UNJUST ENRICHMENT)**
**(Against All Defendants)**

153.     Sunland incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

154.     By the conduct described above, Defendants improperly have received a benefit from the unauthorized use and impairment of rights and interests held by Sunland, resulting in an inequity to Sunland and the retention of the benefit by Defendants.

155.     Accordingly, Defendants' conduct has resulted in his unjust enrichment in violation of Arizona common law.

156.     Defendants' conduct has resulted, and will continue to result, in irreparable harm and damage to Sunland, including, but not limited to, loss of its competitive advantage, loss of

1   business, loss of goodwill, loss of income and/or damage to its reputation.

2   157.   As a result of Defendants' wrongful conduct, Sunland also has suffered loss of

3   income, damage to its reputation and/or lost sales/profits.

4   158.   Unless restrained and enjoined, Defendants will continue his scheme of unjust

5   enrichment.

6   **RELIEF REQUESTED**

7   WHEREFORE, Sunland asks that the Court enter judgment in its favor and against

8   Defendants, and further requests the Court to:

9   A.   Preliminarily and permanently enjoin, restrain and prohibit Defendants, and any

10   and all of their agents, servants, employees, representatives, attorneys and persons

11   or entities in active concert or participation with it, from directly or indirectly:

12   1.   Using any of the Sunland's Protected Information or other trade secret,

13   confidential and/or proprietary information;

14   2.   Soliciting or engaging in any business with any of the customers and

15   potential customers, groups, vendors, suppliers or accounts of Sunland;

16   3.   Inducing or attempting to induce the breach or non-compliance of any

17   employee non-compete, non-solicitation or confidentiality agreement or

18   interfering with Sunland's right, or impairing its ability, to enforce these

19   agreements;

20   4.   Interfering with Sunland's contracts or other business relationships and

21   expectancies; and

22   5.   Violating any of restrictive covenants contained in Franks's and Doughty's

23   Agreements.

24   B.   Direct that an accounting be conducted of all business and benefits Defendants

25   obtained as a result of their unlawful conduct, and award all such benefits, revenues,

26   and profits to Sunland;

27   C.   Establish a constructive trust over the revenue, profits and all other benefits

28   Defendants obtained through violations of fiduciary obligations and/or breaches of

23

1  their other legal obligations, and order Defendants to disgorge and pay them over

2  to Sunland.

3  D.   Order Defendants to return all Sunland Protected Information or other trade secret,

4  confidential and/or proprietary information to Sunland, without keeping any copies

5  thereof;

6  E.   Award Sunland such damages as may be proven at trial, including, without

7  limitation, compensatory damages, exemplary damages, punitive damages, and

8  treble damages, plus interests, costs, and attorneys' fees; and

9  F.   Award Sunland such other and further relief as this Court deems just and equitable.

10  **DEMAND FOR TRIAL BY JURY**

11  Sunland demands a trial by jury as to all claims triable by jury.

12

13  RESPECTFULLY SUBMITTED this 2nd day of December 2021.

14  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.

15  By:   s/ L. Eric Dowell

16  L. Eric Dowell
   Joseph T. Clees

17  Esplanade Center III, Suite 800
   2415 East Camelback Road

18  Phoenix, AZ  85016

19  Matthew S. Disbrow (upon *pro hac vice*
   admission)

20  HONIGMAN LLP
   2290 First National Building

21  660 Woodward Avenue
   Detroit, MI  48226

22  Attorneys for Plaintiff SUNLAND ASPHALT

23  & CONSTRUCTION, LLC

24  49488120.1

25

26

27

28

24